# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

K.V., by and through his guardian ad litem CHONG VANG,

Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

Defendant.

Case No.: 1:18-cv-0168- JLT

ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF K.V.

K.V. by and through his guardian ad litem Chong Vang, asserts he is entitled to benefits under the Social Security Act. Plaintiff seeks judicial review of the decision to deny benefits, arguing the administrative law judge erred in assessing his functioning in two of the six domains used to evaluate the abilities of a minor. For the reasons set forth below, the ALJ's decision is **AFFIRMED**.

## PROCEDURAL HISTORY

On July 22, 2013, Plaintiff filed an application for Title XVI benefits, alleging disability beginning August 17, 2010. (Doc. 13-6 at 2) The Social Security Administration denied the claim initially and upon reconsideration. (Doc. 13-5 at 2-13) After requesting a hearing, Plaintiff testified before an ALJ at a hearing held August 10, 2016. (Doc. 13-3 at 22, 41) The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on July 30, 2010. (*Id.* at 6-20) Plaintiff requested a review by the Appeals Council of Social Security, which found no

reason to change the ALJ's decision on November 3, 2011. (*Id.* at 2) Thus, the ALJ's determination became the decision of the Commissioner of Social Security.

### **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that a claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

### **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, a minor claimant must demonstrate he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). Once a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

### **DETERMINATION OF DISABILITY**

To achieve uniform decisions, the Commissioner established a sequential three-step process for evaluating a minor claimant's alleged disability. 20 C.F.R. § 416.924(e). The process requires the ALJ to determine whether the child (1) engaged in substantial gainful activity and (2) has a severe

impairments or combination of impairments (3) that met or equal one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1. *Id.*

The ALJ must evaluate how the child's limitations affect six broad areas of functioning called "domains" to determine whether a child's impairments functionally equal a Listing. *See* 20 C.F.R. § 416.926a. The domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). When "marked" limitations exist in two domains of functioning, or an "extreme" limitation exists in one domain, the minor claimant meets the Listing requirements. 20 C.F.R. § 416.926a(a).

## A. School Records

In August 2013, Zebrina Graves completed a teacher questionnaire, noting Plaintiff had just started the second grade, and she had been his teacher for one week. (Doc. 13-7 at 29, 31) She noted Plaintiff was a "non-reader" and his dominate language was Hmong. (*Id.* at 29) Ms. Graves opined under the domain of "Acquiring and Using Information," Plaintiff exhibited a "slight problem" with understanding school/content vocabulary and doing math problems.[1] (*Id.* at 31) She believed Plaintiff had "[a]n obvious problem" with comprehending oral instructions, providing oral explanations and adequate descriptions, expressing ideas in written form, and learning new material. (*Id.*) In addition, Ms. Graves opined Plaintiff had a "serious problem" with recalling and applying previously learned material and applying problem-solving skills in class discussions." (*Id.*) Ms. Graves indicated Plaintiff had a "very serious problem" with reading and comprehending written material. (*Id.*) She believed Plaintiff was "academically low," at the kindergarten level, and she paired him with another student who helped Plaintiff complete tasks. (*Id*. at 29, 31) With the domain of "Attending and Completing Tasks," she opined Plaintiff had "no problem" with organizing his things or school materials; and a "slight problem" with carrying out single step-instructions, carrying out multi-step instructions, changing from one activity to the next without being disruptive, completing work accurately without

---

[1] The scale used on the teacher questionnaire ranked the severity of issues from 1 to 5, with "1" being "no problem;" 2 being a "slight problem," 3 being an "obvious problem," 4 being a "serious problem," and 5 being "a very serious problem." (*See* Doc. 13-7 at 31-32)

careless mistakes, working without distracting himself or others, and working at a reasonable place and finishing on time. (*Id.* at 32) Ms. Graves did not identify any problems as "very serious" under this domain. (*Id.*)

In January 2014, Ms. Graves completed another teacher questionnaire. (Doc. 13-7 at 46-53) She again indicated Plaintiff had problems with the "Acquiring and Using Information" and "Attending and Completing Tasks" domains. (Doc. 13-7 at 47-48) Ms. Graves noted Plaintiff was "very low" academically, explaining he received instructions at the kindergarten level and did not "know all the sounds of the letters in the alphabet." (*Id.* at 47) She indicated Plaintiff had a speech problem for which he went to speech therapy one day per week, as well as daily instruction for thirty minutes in English Language Arts. (*Id.*) Ms. Graves believed Plaintiff had a "serious problem" with comprehending and doing math problems, providing organized oral explanations and adequate descriptions, and applying problem-solving skills in class discussions. (*Id.*) Ms. Graves noted Plaintiff had "a difficult time recalling information," and she sat him "by a high student who help[ed] him in class." (*Id.*) Under the "Attending and Completing Tasks" domain, Ms. Graves indicated Plaintiff did not have problems with waiting to take turns or completing work accurately without careless mistakes. (*Id.* at 48) She believed Plaintiff had a "slight problem" with paying attention when spoken to directly, carrying out single-step instructions, completing class/ homework assignments, and working without distracting himself or others. (*Id.*) Ms. Graves indicated Plaintiff had a "serious problem" with re-focusing on a task when necessary, working at a reasonable pace, and completing work accurately without careless mistakes. (*Id.*) According to Ms. Graves, each of these problems occurred on a monthly basis. (*Id.*) She did not identify any "very serious" problems under this domain, or problems that occurred on an hourly, daily, or weekly basis. (*Id.*)

In April 2014, Plaintiff received an "Individualized Education Program" ("IEP"), which indicated he had a speech or language impairment. (Doc. 13-9 at 18) Ms. Graves reported Plaintiff was "making slow improvements" though he "continue[d] to struggle in all areas of academics. (*Id.*) Plaintiff participated in an English language program, math tutoring after school, and reading intervention. (*Id.*) Ms. Graves indicated Plaintiff had "difficulty with [the] ability to process and retain information," which was "most evident in his inability to calculate basic math equations such as adding

4

and subtracting with the use of manipulatives and several adult models at the one-on-one level. (*Id.*) She also observed that Plaintiff continued to have difficulty writing but had "overall improvements" with his communication skills. (*Id.* at 19-20) The IEP team observed:

> [H]is verbal performance of the English language is just entering the "Intermediate" level; therefore his verbal language contains a limited range of vocabulary, but with a broader range of syntax appropriate to his setting and the purpose of his speech. He is able to tell a coherent story but may not clearly state the main events of his story and he tends to use[] more phrases and incomplete sentences while speaking. These are not language or articulation disordered errors; they are due to his development of English with a different primary language in his home environment and his early childhood language development.

(*Id.* at 20) The IEP team concluded Plaintiff did not require special education classes, and his regular teacher could provide English language mainstream instruction. (*Id.* at 19, 23)

Plaintiff's first report card for his third-grade year indicated his GPA was a 1.25, with an F in reading, C- in writing, D- in math, and C in social studies. (Doc. 13-7 at 69) The report also indicated Plaintiff exhibited "satisfactory" effort/citizenship with following directions, paying attention, working in groups, and cooperating on the playground. (*Id.*) He received "unsatisfactory" ratings for working independently, turning work in on time, and completing his homework. (*Id.*) His citizenship was ranked as "outstanding" for treating others with respect and showing self-control. (*Id.*) In October 2014, a preliminary "Individual Student Learning Plan" was prepared for Plaintiff, indicating that he was at risk of retention in the third grade. (Doc. 13-7 at 68) The preliminary plan indicated Plaintiff needed reading intervention and small group instruction for reading strategies and comprehension skills. (*Id.*) In November 2014, Plaintiff's grade in reading improved to a D+, while he again received a C- in writing and D- in math. (*Id.* at 67) The fourth quarter of his third grade year, Plaintiff received Fs in reading, writing, and social studies, and a D- in math. (*Id.* at 78)

Plaintiff's teacher in the fourth grade, Suzanne Mendes, noted Plaintiff read 41 correct words per minute at grade level. (Doc. 13-7 at 92) Ms. Mendes indicated Plaintiff's writing was "often confusing and lack[ed] sentence structure." (*Id.*) She also noted Plaintiff knew "some of his addition and subtraction facts" and was "working on x2 multiples." (*Id.*)

In May 2016, Ms. Mendes completed a teacher questionnaire, on which she indicated Plaintiff had problems with the "Acquiring and Using Information" and "Attending and Completing Tasks"

domains. (Doc. 13-8 at 3-4) She believed Plaintiff "struggle[d] with most grade level materials and [had] difficulty meeting grade level standards," as his reading and writing abilities were at the second-grade level and math abilities were those of a third-grader. (*Id.* at 2, 3) Ms. Mendes opined Plaintiff had an "obvious problem" with comprehending oral instructions, comprehending and doing math problems, understanding and participating in class discussions, providing organized oral explanations and adequate descriptions. (*Id.* at 3) She indicated Plaintiff had a "serious problem" with vocabulary and learning new material. (*Id.*) She also believed Plaintiff had a "very serious problem" with reading and comprehending written material, expressing ideas in writing, recalling and applying previously learned material, and applying problem-solving skills in the class discussions. (*Id.*)

Under the "Attending and Completing Tasks" domain, Ms. Mendes believed Plaintiff had a "slight problem" with sustaining attention, carrying out single-step instructions, waiting his turn, changing activities without being disruptive, organizing his things or school materials, and completing assignments. (Doc. 13-8 at 4) In addition, she indicated Plaintiff had a "serious problem" with paying attention when spoken to, focusing upon tasks, and working without distracting himself or others. (*Id.*) Finally, Ms. Mendes noted Plaintiff had a "very serious problem" with carrying out multi-step instructions and completing work without careless mistakes. (*Id.*) Ms. Mendes indicated Plaintiff manifested these problems daily. (*Id.*) She opined Plaintiff's classroom citizenship was "satisfactory," and concluded he did not have issues with the remaining domains. (*Id.* at 5-7, 10)

**B.    Relevant Medical Opinions**

Dr. Richard Engeln performed a psychological evaluation on October 31, 2013, when Plaintiff was seven years old. (Doc. 13-11 at 20) Dr. Engeln noted Plaintiff was accompanied by his parents and "an adult male who described [himself as] a spokesperson for the family." (*Id.* at 21) Dr. Engeln observed that when checking in, Plaintiff "appeared to begin to say something, but very quickly, the spokesperson stated 'He can't talk.'" (*Id.*) His parents reported they had nine children, of which Plaintiff was the youngest and the only born in the United States, and the family primarily spoke Hmong. (*Id.* at 22) However, Plaintiff's parents indicated he did "not talk at all in Hmong or English." (*Id.* at 23) Dr. Engeln determined Plaintiff's "visual intelligence is in the average range" and his "[g]rapho-motor reproductions were assessed in the average range for the age level. (*Id.* at 22) He

observed: "[Plaintiff] would not cooperate on academic tasks presented, rejecting all the academic measurements… [and] he achieved a grade equivalent scores of beginning preschool on reading, spelling and arithmetic." (*Id.*) Further, Dr. Engeln observed that Plaintiff "refused to [say] any words." (*Id.*) According to Dr. Engeln, Plaintiff's communication and daily living skills appeared to be "in the moderate range of mental retardation" and his socialization skills were borderline. (*Id.* at 23) He concluded Plaintiff "presented without any stigmata of developmental disorder," and diagnosed Plaintiff with oppositional behavior disorder, opining Plaintiff's issues "appear[ed] to be more behavioral than academic delay." (*Id.*)

On February 6, 2014, Dr. Pamela Hawkins reviewed Plaintiff's school records and evaluations from his teacher and found Plaintiff had a severe impairment, but it did "not meet, medically equal, or functionally equal the listings." (Doc. 13-4 at 6-8) Dr. Hawkins noted Plaintiff's teacher ranked his issues under the "acquiring and using information" domain as "in the serious range," and Dr. Hawkins opined his limitations were "[l]ess than marked." (*Id.* at 7) She also determined Plaintiff had "less than marked" issues with attending and completing tasks. (*Id.*) Dr. Hawkins found no limitation with the remaining domains related to the ability to interact and relate with others, move about and manipulate objects, care for himself, and health and physical well-being. (*Id.* at 7-8)

Dr. Katherine Redwine performed a psychological evaluation, during which she administered intellectual tests on April 25, 2014. (Doc. 13-11 at 37, 53-54) Plaintiff "obtained scores in the mildly impaired range for verbal comprehension (59), perceptual reasoning (61), and processing speed abilities (68), and in the borderline range for working memory (74) on the WISC-IV." (*Id.* at 37) Dr. Redwine did not calculate a full-scale IQ score "due to the significant discrepancy between his Working Memory Index and Verbal Comprehension Index scores." (*Id.*) Further, she believed the results of the testing "should be interpreted with some caution due to [Plaintiff's] reluctance at times to answer questions." (*Id.* at 54) Dr. Redwine observed that Plaintiff "demonstrated somewhat of a hit-and-miss response style, indicating possible problems with attention" and his "scores may reflect an underestimate of his true cognitive potential." (*Id.*) Dr. Redwine believed Plaintiff would benefit from special education services; having limited television, video game, and screen time "to provide him with ample opportunity to engage in language and social-based activities; treatment with a behavioral intervention

specialist "to improve his adaptive abilities;" and "a referral to a mental health agency to assess for the presence of attention, mood, or anxiety disorders." (*Id.* at 57)

In June 2014, Plaintiff was determined to be eligible for treatment though Central Valley Regional Center. (Doc. 13-11 at 37) Alex Vang, an intake counselor, observed that Plaintiff answered all questions that were spoken in Hmong and did not answer questions spoken in English. (*Id.*) According to Mr. Vang, Plaintiff "was able to converse… in Hmong fairly well," and "demonstrated skills that his parents reported he was not able to perform." (*Id.*) Mr. Vang also believed Plaintiff knew and understood "more than his parents reported." (*Id.*) He. believed that because Plaintiff was the youngest child, everything was "done for him" and "[h]e was not given an opportunity to grow." (*Id.*)

On August 21, 2014, Dr. Steven Swanson performed a psychological assessment, which included the Leiter International Performance Scale and Vineland Adaptive Behavior Scales. (Doc. 13-11 at 26-27) Dr. Swanson noted Plaintiff's father "describe[d] him as 'very slow.'" (*Id.* at 27) He observed that Plaintiff "appeared motivated to exaggerate compromise in functioning," because Plaintiff said he did not know his age, school grade, whether he had any siblings, or the name of the city in which he lived. (*Id.*) In addition, Dr. Swanson noted: "On the psychometrics, he appeared intentionally to give the incorrect answer. He was given encouragement to give the correct answer and was easily able to do so with prompting but then went back to avoiding the correct answer." (*Id.* at 27-28) Dr. Swanson believed Plaintiff's "father appeared motivated to exaggerate [Plaintiff's] compromise in functioning." (*Id.* at 28) Dr. Swanson found "no genuine reason to believe that [Plaintiff's] mental or emotional functioning falls sincerely outside normal limits." (*Id.* at 29)

In September 2014, Dr. Jan Jacobson reviewed the records and completed a functional capacity assessment. (Doc. 13-4 at 20-21) She noted that Plaintiff "was uncooperative [and] exaggerated his deficits" during the consultative examinations. (*Id.* at 21) Dr. Jacobson opined Plaintiff had "less than marked" difficulties with acquiring and using information, as well as attending and completing tasks. (*Id.* at 20) She also opined Plaintiff had no limitation with the remaining domains. (*Id.* at 21)

**C.  Third Party Statement**

Chong Vang, Plaintiff's father, completed a "Function Report" on July 22, 2013. (Doc. 13-7 at 8-16) Mr. Vang indicated Plaintiff had problems talking clearly and could "hardly ever" be understood

by people who did not know him well, though people who knew Plaintiff could understand his speech some of the time. (*Id.* at 10) Mr. Vang indicated Plaintiff could not or did not communicate by telling stories, explain why he did things, talk with family or friends, read letters or simple words, print his name, add or subtract numbers over 10, use scissors, work video game controls, use a zipper, tie his shoes, take a bath without help, brush his teeth, perform chores, or play team sports. (*Id.* at 11-15) He believed his son was able to get along with adults, such as school teachers. (*Id.* at 14)

### D. Hearing Testimony

Mr. Vang testified with the assistance of a Hmong interpreter at the hearing. (Doc. 13-3 at 42) Mr. Vang reported he did not know his son's age exactly, but believed he was "[e]ight or nine years old." (*Id.* at 44) He stated that he lived with his wife and eleven kids in a home purchased by one of his sons. (*Id.* at 45) Mr. Vang reported his "other kids speak English," but Plaintiff was "not interested to learn or to speak English," and he spoke Hmong with his siblings. (*Id.* at 45-56)

The ALJ questioned Plaintiff and asked him to respond in English. (Doc. 13-3 at 46) When asked his grade in school and the name of the school, Plaintiff responded, "I don't know." (*Id.*) Plaintiff stated he did not have any friends. (*Id.*) When questioned by counsel, Plaintiff identified his favorite color as blue and stated that he liked to color with crayons. (*Id.* at 49) He stated that he was able to count to three and he did not like to read, though he had to read in class. (*Id.* at 50) Plaintiff said his favorite thing to do at school was play during recess, and he liked to "play on the Playstation" at home. (*Id.* at 50-51)

### E. The ALJ's Findings

The ALJ noted Plaintiff was born on July 22, 2006, and "was a school-age child on July 22, 2013, the date the application was filed." (Doc. 13-3 at 25) Pursuant to the three-step process, the ALJ first found Plaintiff did not engage in substantial gainful activity after the application date. (*Id.*) Next, the ALJ determined Plaintiff had the following severe impairments: "mild intellectual disability and second language acquisition issues." (*Id.*)

To determine whether Plaintiff's impairments satisfied the listings, the ALJ examined the six functional domains set forth in 20 C.F.R. § 416.926a. The ALJ determined Plaintiff had "less than marked limitation in acquiring and using information." (Doc. 13-3 at 30) In addition, he had "less

than marked limitation in attending and completing tasks." (*Id.* at 31) The ALJ opined Plaintiff had "no limitation" in interacting and relating with others, moving about and manipulating objects, the ability to care for himself, and in health and physical well-being. (*Id.* at 32-35) Because Plaintiff did not have "marked" limitations in two domains or an "extreme" limitation in one domain, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. (*Id.* at 35)

## **DISCUSSION AND ANALYSIS**

Plaintiff argues the ALJ erred in her evaluation of the first and second domains related to "acquiring and using information" and "attending and completing tasks." (Doc. 21 at 6) Plaintiff observes that the ALJ found he had "less than marked limitation" in these domains and contends "[t]he record supports greater limitation[s]." (*Id.* at 6-7) The Commissioner argues, "Contrary to Plaintiff's contention, the ALJ found correctly that Plaintiff's impairments did not cause marked limitations in the first two domains." (Doc. 22 at 5)

### A. Acquiring and using information

This domain concerns how well a child can acquire or learn information, and how well the child can use that information. 20 C.F.R. § 416.926a(g). The Regulations explain that a school-age child "should be able to learn to read, write, and do math, and discuss history and science." *Id.*, § 416.926a(g)(2)(iv). Limitations in this domain may be demonstrated with the inability to understand words about space, size, or time; "difficulty recalling important things" learned in school the day before, "difficulty solving mathematics questions or computing arithmetic answers;" speaking "only in short, simple sentences;" and "difficulty explaining what you mean." *Id.*, § 416.926a(g)(3).

The ALJ determined Plaintiff had "less than marked limitation in acquiring and using information." (Doc. 13-3 at 30, emphasis omitted) In so finding, the ALJ observed:

> In the Child Function Report, Mr. Chong Vang (father) asserts that his child's ability to progress in learning is significantly limited, such that he is unable to read capital/small letters of the alphabet, unable to read/understand simple sentences or stories in books/ magazines, unable to print his name, spell most 3-4 letter words, or write a simple story with 6-7 sentences, and unable to add/subtract numbers over 10 (Ex. 3E). The claimant's teacher reported that the claimant has a very serious problem comprehending oral instructions, understanding school and content vocabulary, recalling and applying previously learned material, and expressing ideas in written form (Ex. 7E). Ms. Mendez (4th grade teacher) reported that the claimant had difficulty with reading comprehension, making inferences, figurative language, sequencing information [and] main ideas in text. He demonstrated some difficulty composing paragraphs. He rushed through his work, little attention to detail. He often needed to have the directions repeated (Ex. 8F/p. 28).

10

> For these reasons, the undersigned finds no more than less than marked limitation in this domain.

(Doc. 13-3 at 30) In addition, the ALJ noted her conclusion was "supported by the assessment offered by Dr. Pamela Hawkins and Dr. Jan Jacobson, a psychologist who reviewed the record … [and] reached the same conclusion." (*Id.*)

### B. Attending and completing tasks

This domain addresses the claimant's ability to focus and maintain attention. 20 C.F.R. § 416.926a(h). It also concerns how well a child can "begin, carry through, and finish … activities." *Id.* The Regulations explain: "When you are of school age, you should be able to focus your attention in a variety of situations in order to follow directions, remember and organize your school materials, and complete classroom and homework assignments. You should be able to concentrate on details and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments)." *Id.*, § 416.926a(h)(2)(iv). In addition, school children "should be able to change … activities or routines without distracting [themselves] or others, and stay on task and in place when appropriate." *Id.* Difficulties in this domain may be demonstrated where a child is "easily startled, distracted or overreactive to sounds, sights, movements, or touch;" slow to focus on, or fail to complete activities of interest" such as games or art projects; the child is "repeatedly sidetracked" from activities or frequently interrupts others;" is "easily frustrated" and gives up on tasks; or "require[s] extra supervision to keep [him] engaged in an activity." *Id.* § 416.926a(h)(3).

The ALJ found Plaintiff had "less than marked" limitation with this domain. (Doc. 13-3 at 31, emphasis omitted) Reviewing the evidence related to this domain, the ALJ observed:

> The claimant has less than marked limitation in attending and completing tasks. The claimant's father reported that his child's ability to attend and complete task is significantly limited such that he is unable to finish what he starts, unable to complete homework or chores most of the time, and unable to keep busy on his own (Ex.3E). Ms. Zebrina Givens (teacher) noted the claimant has a serious problem paying attention when spoken to directly, waiting to take turns, and completing class/homework assignments (Ex. 6E). Ms. Suzanne Mendes (teacher) reported the claimant has a serious problem paying attention when spoken to directly. Focusing long enough to finish assigned task, refocusing to task when necessary, and carrying out multi-step instructions (Ex. 17F). Dr. Swanson concluded the claimant appeared to have the ability to engage in and sustain an activity at a pace that is mostly appropriate for his age (Ex. 4F).

(*Id.*) In addition, the ALJ noted her conclusion that Plaintiff's limitations were "less than marked" was

"supported by the assessment offered by the State Agency's psychological consultant who has reached the same conclusion." (*Id.*)

### C. Substantial evidence supporting the ALJ's decision

Plaintiff observes that in evaluating the first two domains, the ALJ relied upon the statements of Plaintiff's father, his teachers, a psychoeducation report, and opinions of a consultative examiner. (Doc. 21 at 6) However, Plaintiff contends "[t]he record supports greater limitations" in the "acquiring and using information" and "attending and completing tasks" domains. (*Id.*) In particular, Plaintiff asserts that with the first domain:

> K.V.'s father noted significant limitations. AR 157-165. Ms. Graves observed obvious to very serious problems in this domain. AR 180, 196. Ms. Mendez, another teacher observed serious to very serious difficulties in this domain on a daily basis. AR 245, 532. A student learning plan recommended small group instructing. AR 217. An April 2014 IEP revealed that K.V. continued to struggle in all areas of academics. AR 275. K.V. was found eligible for Regional Center services due to test results. AR 402, 417-422.

(Doc. 21 at 6) With the second domain, Plaintiff contends:

> Ms. Graves noted obvious to serious problems in this domain. AR 181, 197. Ms. Mendez noted serious to very serious problems in this domain. AR 245. It was noted on psychological testing that adaptive functioning was extremely limited. AR 417- 422.

(*Id.* at 7) According to Plaintiff, "Although Dr. Swanson opined that K.V. had the ability to engage in and sustain an activity at an age appropriate pace, he did not specifically address limitations in this or any of the 6 domains." (*Id.*) Thus, Plaintiff contends the ALJ's findings regarding the first two domains "lack[] the support of substantial evidence." (Doc. 21 at 6)

In response, the Commissioner argues the ALJ identified "valid reasons supported by the record for finding that in the domain for acquiring and using information Plaintiff's functional limitations were not 'marked.'" (Doc. 22 at 8) In addition, the Commissioner argues that "the ALJ … relied properly on the assessments offered by the State Agency's psychological consultants who reached the same conclusion" related to the attending and completing tasks domain. (*Id.* at 9) Thus, the Commissioner asserts "there was substantial evidence to support the ALJ's finding and her analysis was sufficient." (*Id.* at 10)

Significantly, the term "substantial evidence" "describes a quality of evidence ... intended to indicate that the evidence that is inconsistent with the opinion *need not* prove by a preponderance that

12

the opinion is wrong." 1996 SSR 4 LEXIS 9 at *8.[2] Rather, "[i]t need only be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the medical opinion." *Id.* The opinion of an examining physician may be substantial evidence in support of the ALJ's decision. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Likewise, an ALJ may use evidence from educational personnel, including "school teachers, counselors, [and] early intervention team members." 20 C.F.R. § 416.913(d)(2). Thus, statements from these sources may be substantial evidence in support of an ALJ's findings.

As acknowledged by Plaintiff, the ALJ referred to school records and assessments of teachers to evaluate the first two domains. (Doc. 13-3 at 30-31) The ALJ noted that although Mr. Vang indicated Plaintiff was completely unable to read letters of the alphabet or spell, Ms. Mendes observed that Plaintiff had "some difficulty composing paragraphs" (*id.* at 30), which indicated Plaintiff had learned to read and write. In addition, both Ms. Graves and Ms. Mendes rated Plaintiff's difficulties with activities under the acquiring and using information domain as "obvious" to "very serious"— thereby indicating the teachers' belief that Plaintiff did not have marked or extreme difficulties with *all* activities under the first domain. (*See* Doc. 13-7 at 31, 47; Doc. 13-8 at 3)

Similarly, Plaintiff's teachers rated very few problems problems with activities under the "attending and completing tasks" as "serious" or "very serious." (Doc. 13-7 at 32, 48; Doc. 13-8 at 4) Ms. Graves did not identify *any* problems under the second domain as "very serious" and believed Plaintiff's issues were manifested only on a monthly basis during the school year. (Doc. 13-7 at 48) Both Ms. Graves and Ms. Mendes also indicated Plaintiff also had "no problem" or only "a slight problem" with several activities under this domain. (Doc. 13-7 at 32, 48; Doc. 13-8 at 4) Plaintiff fails to identify any specific opinions from Ms. Graves or Ms. Mendes that support a finding of marked or extreme limitations under the domains. Instead, the statements of his teachers are substantial evidence supporting the conclusions of the ALJ. *See, e.g. Abukhader v. Comm'r of Soc. Sec.*, 2013 WL 5882858, *2, *6 (S.D.N.Y. 2013) (ALJ's determination that the claimant had "less than marked" limitations with

---

[2] Social Security Rulings are issued by the Commissioner to clarify regulations and policies. Though they do not have the force of law, the Ninth Circuit gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

13

the domain of acquiring and using information was based upon substantial evidence even where a teacher questionnaire indicated the plaintiff had "very serious" problems with activities associated with the domain).

Though Plaintiff refers to the IEP, which indicates he "continued to struggle in all areas of academics" (Doc. 21 at 6), he ignores the fact that Ms Graves indicated Plaintiff had made "overall improvements" with his communication skills. (Doc. 13-9 at 19) Notably, the IEP team indicated a belief Plaintiff's language difficulties were "due to his development of English with a different primary language in his home environment and his early childhood language development." (*Id.* at 20) The IEP team concluded Plaintiff did not require special education classes and his regular teacher could provide English language mainstream instruction. (*Id.* at 19, 23) Thus, the IEP does not undermine the ALJ's findings related to Plaintiff's abilities.

Moreover, the ALJ's findings are supported by the opinions of Drs. Swanson, Hawkins, and Jacobson. Dr. Swanson performed a psychological assessment, which included evaluating Plaintiff with the Leiter International Performance Scale and Vineland Adaptive Behavior Scales. (Doc. 13-11 at 26-27) Dr. Swanson found "no genuine reason to believe that [Plaintiff's] mental or emotional functioning falls sincerely outside normal limits." (*Id.* at 29) This opinion is substantial evidence in support of the ALJ's conclusions that Plaintiff's limitations were "less than marked." *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an examining physician's opinion constitutes substantial evidence if based upon the physician's own independent examination). The opinions of non-examining physicians such as Drs. Hawkins and Jacobson—who reviewed the record and opined Plaintiff had "less than marked" limitations with the first two domains—are consistent with the opinions of Dr. Swanson and his teachers that Plaintiff did not have "a serious problem" with all activities under the domains. Accordingly, the assessments of Drs. Hawkins and Jacobson are also substantial evidence supporting the ALJ's findings. . *See Tonapetyan,* 242 F.3d at 1149 (opinions of non-examining physicians "may constitute substantial evidence when . . . consistent with other independent evidence in the record.")

**CONCLUSION AND ORDER**

Although Plaintiff argues the evidence supports a finding that his limitations with the first two

domains were greater than those identified by the ALJ, substantial evidence in the record supports the ALJ's findings. It is not the role of the Court to reweigh the evidence. *See German v. Comm'r of Soc. Sec.*, 2011 WL 924737 (E.D. Cal. Mar. 14, 2011). Rather, "[w]here the evidence is susceptible to more than one rational interpretation, one of which the ALJ"s decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

The findings of the ALJ regarding the first and second domains are supported by substantial evidence, including the opinions of his teachers and several physicians. Therefore, the Court must uphold the ALJ's determination that Plaintiff is not disabled. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff K.V.

IT IS SO ORDERED.

Dated: **June 1, 2019**      **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE